Svetlana Spivak
HOLMES WEDDLE & BARCOTT, P.C.
999 Third Avenue, Suite 2600
Seattle, Washington 98104
Telephone: (206) 292-8008
Facsimile: (206) 340-0289
Email: Sspivak@hwb-law.com
Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALAGANIK, LLC,<br><br>                Petitioner,<br><br>    v.<br><br>STACEY PLUM, an individual,<br><br>                Respondent. | **COMPLAINT FOR DECLARATORY RELIEF**<br><br>Case No. |

COMES NOW Petitioner ALAGANIK, LLC, and alleges as follows:

**I.**

**PARTIES**

1. Petitioner is and was at all pertinent times a limited liability company organized and existing under the laws of the State of Alaska and doing business within the State, and was the owner of the vessel ALAGANIK on or about July 5, 2016.

2. Respondent is a seaman who is a resident of the State of Alaska, and was employed by Petitioner. Respondent's employment with Petitioner required that he perform the duties of a seaman aboard Petitioner's vessels, including the fishing vessel

ALAGANIK. On July 5, 2016, Respondent was employed by Petitioner and working aboard the ALAGANIK.

## II.

## JURISDICTION

3. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 – 2202 for the purpose of determining questions of actual controversy between the parties, namely, Petitioner's obligation, if any, to pay for maintenance (including the current rate of maintenance that includes a sizeable food allowance, rental car, hotel in Anchorage), and for medical care pursuant to the doctrine of maintenance and cure.

4. This action is an admiralty and maritime dispute within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Court's jurisdiction over this action rests in 28 U.S.C. § 1333.

5. Respondent's employment contract with Petitioner, signed July 2, 2016, provides that in the event of a legal action, proper venue shall be in the Third Judicial District of the State of Alaska in Cordova Alaska or in the United States Federal District Court for Alaska at Anchorage. The venue is also proper in this court pursuant to 28 U.S.C. § 1391(b).

## III.

## FACTS

6. On or about July 5, 2016, while anchored in the west channel in Cordova, Alaska, the F/V ALAGANIK was struck by a another vessel.

7. Respondent was aboard the ALAGANIK, and under Petitioner's employ, at the time it was struck.

8. Following the allision, Respondent returned to his job as a sixth grade teacher, but at some point went onto medical leave.

9. Respondent has received medical care of varying degrees and types since the time of the allision, including physical therapy, occupational therapy, acupuncture, chiropractic treatment, rolfing, speech, sleep studies, and singing lessons.

10. Respondent's primary care provider is Adam Grove, a naturopath. He has also been seen by an orthopedist, neurologist, neuro-opthamalogist, psychiatrist, and nutritionist.

11. The Respondent asserts that he sustained a traumatic brain injury as a result of the allision.

12. Petitioner normally lives in Cordova, Alaska, but due to the limited medical care available in Cordova, Respondent has been staying in Anchorage, Alaska.

13. Respondent initially travelled to and from Anchorage for medical appointments. Doctors recommended that respondent attend an in-house brain-trauma recovery program in Nebraska. Petitioner agreed to pay for Respondent's attendance at the program, and for Respondent's apartment in Cordova while he would be away. Respondent refused to attend the program.

14. An attempt then was made to simulate the brain-trauma recovery program in Anchorage. At that time, due to the frequency of appointments, Respondent began

staying in a hotel in Anchorage. Petitioner paid for the hotel $179.00/day summer rate and $99.00/day winter rate. At the request of a physician that Respondent have access to a kitchen, in October 2017 Respondent moved to a different hotel that had a kitchen. Since then Petitioner has been paying $155.88 per day for the hotel. Respondent requested that he pay directly and get reimbursed, as this way he receives loyalty program points from the hotel. Respondent also uses the hotel phone for his personal use, and that expense gets charged to Petitioner as well.

15. **In addition** to paying for Respondent's hotel in Anchorage, for the past six months since Respondent moved to a hotel in Anchorage, Petitioner has been paying $1,466.83 in rent/utilities a month for Respondent's apartment in Cordova. Petitioner agreed to pay for the apartment for six months while Respondent was undergoing a simulated brain-trauma program in Anchorage. However, Respondent and his primary provider did not comply with number of the agreed upon points of the plan, and six months agreed upon had passed, with Respondent claiming continuing need to remain in Anchorage and treat. At this time, Petitioner discontinued paying for apartment in Cordova.

16. Respondent requested a rental car while he remains in Anchorage. Respondent demanded a full size Chevy Tahoe SUV, with prepaid gas and all the available insurance. Respondent has been using the rental car for personal use, in addition to his medical appointments. The cost of this rental car for the period of December 22-January 26, 2018, was $4,301.13. That appears to be the average cost per

COMPLAINT FOR DECLARATORY RELIEF
*Alaganik v. Stacey Plum*
Case No. _____- Page 4 of 9
Case 3:18-cv-00038-TMB   Document 1   Filed 02/09/18   Page 4 of 9

month. As of February 1, 2018, Petitioner requested that respondent change to a full size car as opposed to a luxury SUV.

17. Respondent maintains that he requires a companion with him at all times. Thus, all above-referenced travel and lodging included arrangements for his significant other to accompany him.

18. Respondent demands that his significant other be trained as a professional care-taker at Petitioner's expense and be paid for taking care of him 24/7. Petitioner offered to engage a professional care taker. This did not take place.

19. Respondent chose a nurse-case manager to help coordinate his health care needs. Petitioner agreed to pay for her services. The nurse case manager quit because Respondent was not co-operating with her.

20. Petitioner has paid a food allowance since the time of Respondent's injury. For over a year, Petitioner has been paying $90 **per day ($2,700 a month)** for food for respondent and his significant other. This food allowance is paid **in addition** to the travel and lodging referenced above.

21. When, at the request of his physician, the Respondent was relocated to a hotel with the kitchen, his food allowance was reduced to $1,000.00 a month, according to the FDA food allowance for him and his significant other.

22. Respondent claims that his current food allowance, and even the food allowance of $90 per day, are insufficient for his needs.

23. Respondent has requested a food allowance of $150 **per day** ($4,500 a month). Petitioner disputes the necessity of a food allowance of $150 per day.

24. Petitioner has been paying, and continues to pay, all of Respondent's medical bills.

25. Petitioner is not aware of any unpaid medical bills.

26. Petitioner has paid, and continues to pay, for all of the travel and lodging expenses described in paragraphs 14, 15, 16, and 20-21 above.

27. In total, Petitioner has been paying maintenance and other associated expenses in the amount of approximately $13,000.00 per month. Total paid for Respondent's maintenance and cure is $263,000.00.

28. On November 10, 2017, a records review was conducted by neurologist Dr. Lawrence Murphy. Dr. Murphy concluded that Respondent, more probably than not, suffered at most temporary injuries due to [the] incident. . . . There is no evidence that [Respondent] has any incident-related residual impairment. . . . There is specifically no evidence to support the statement (made by [his] naturopath) that he needed, or would need, a companion when traveling."

29. On December 26, 2017, another medical records review was conducted. Neurologist Dr. Richard Marks concluded that Respondent sustained a cervical strain resulting in a temporary symptomatic exacerbation of the pre-existing degenerative condition, but not resulting in any permanent objective aggravation, and that Respondent suffered a minor concussion.

30. Dr. Marks opined, on a more-probable-than-not basis, that Respondent did not sustain brain damage from the incident.

31. Dr. Marks further opined that Respondent is currently at maximum medical improvement, and has been since six months following the allision.

32. Dr. Marks also opined that, from a neurologic standpoint, Respondent is able to return to work as a teacher, and does not require any sort of "assisted care".

33. Petitioner disputes whether Respondent is undergoing or requires curative care.

## IV.

## **CLAIM FOR RELIEF**

3. Petitioner alleges that Respondent has reached maximum medical cure and is no longer entitled to maintenance and/or cure, as supported by Drs. Lawrence Murphy and Richard Marks.

4. Petitioner also alleges that it has no obligation pursuant to the doctrine of maintenance and cure to pay to, or on behalf of, Respondent a <u>food</u> allowance (over and above lodging expenses) of $150 per day ($4,500 per month) or $90 per day ($2,700 per month), because is an amount that far exceeds reasonableness and is not supported by evidence.

5. Petitioner also alleges that it has no obligation pursuant to the doctrine of maintenance and cure to pay for Respondent's apartment in Cordova while he is residing in Anchorage.

6. Based on the foregoing allegations, Petitioner alleges that an actual controversy has arisen and now exists between Petitioner and Respondent concerning the extent to which Petitioner is obligated to pay for maintenance and cure demanded by Respondent.

7. Petitioner therefore seeks a declaration that it has no obligation under the doctrine of maintenance and cure to (1) authorize and/or pay for a food allowance of $150 / $90 per day at any time, (2) pay for an apartment in Cordova, and/or (3) authorize and/or pay any further maintenance and cure because Respondent has reached maximum medical improvement.

8. A prompt and speedy declaration of the rights and duties of all parties is necessary and appropriate at this time, given the clearly-delineated controversy outlined above.

## V.

## **PRAYER**

WHEREFORE, Petitioner prays for judgment as follows:

1. That the Court declare that Petitioner has no obligation under the doctrine of maintenance and cure to provide Respondent with a food allowance of $150 per day under any circumstance;

2. That the Court declare that Petitioner has no obligation under the doctrine of maintenance and cure to authorize and/or pay for Respondent's apartment in Cordova;

3. That the Court declare that Petitioner has reached maximum medical improvement and, as such, Petitioner has no obligation under the doctrine of maintenance and cure to authorize and/or pay for any further medical care requested by Respondent;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

DATED this 8th day of February, 2018.

HOLMES WEDDLE & BARCOTT, P.C.

\_\_\_/s/ *Svetlana Spivak*\_\_\_
Svetlana Spivak, ASBA #0608049
999 Third Avenue, Suite 2600
Seattle, Washington 98104
Telephone: (206) 292-8008
Facsimile: (206) 340-0289
Email: sspivak@hwb-law.com
Attorney for Petitioner

G:\4605\30199\Pleading\Complaint for Dec Relf 2.8.18.doc